BDB:HWG:cer

# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS HEAPHY, JR., | : | Civil No. 1:21-CV-1019 |
| Petitioner | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | |
| STEPHEN SPAULDING, | : | Filed Electronically |
| Respondent | : | |

## RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Thomas Heaphy, Jr., is a federal inmate confined at the Satellite Prison Camp at the United States Penitentiary, Lewisburg (SPC-Lewisburg) and currently serving a 72-month federal sentence for tax evasion and mail and wire fraud. Heaphy claims he is entitled to immediate supervised release because Respondent has incorrectly taken the position that he cannot receive Earned Time Credits (ETCs) under the First Step Act (FSA) for programming completed before 1/15/22 and, therefore, has improperly refused him 420 days of ETC that he believes he has earned. He is wrong on both points.

*First*, Heaphy's belief that Respondent has determined he cannot receive ETCs before 1/15/22 is without basis. Indeed, the BOP has already assessed Heaphy's criminogenic needs under the FSA, and ETCs to which Heaphy is eligible will be calculated and applied pursuant to the FSA's phase-in paradigm. *Second*, Heaphy's belief he is entitled to 420 days of ETC is neither factually nor legally

supported. Inmates are eligible for ETCs only for successfully completing approved qualifying programs that correspond to an assessed criminogenic need, and Heaphy has completed only two such programs. These two programs render Heaphy eligible to receive no more than 30 days of ETC, which will be calculated and applied pursuant to the FSA.

But this Court should not even reach the merits of the Petition. Heaphy admittedly failed to exhaust his administrative remedies, and his request that this Court waive the exhaustion requirement is meritless. Therefore, Heaphy's Petition should be dismissed or, in the alternative, denied.

## I.   FACTUAL BACKGROUND

### A.   Heaphy's Imposed Term of Incarceration.

On 7/28/17, Heaphy pleaded guilty in the United States District Court for the District of Connecticut to conspiracy to commit mail and wire fraud and tax evasion. [Ex. 1, *U.S. v. Heaphy*, 3:17-CR-00168, Dkt. 1 (Information); Ex. 2, *U.S. v. Heaphy*, 3:17-CR-00168, Dkt. 5 (Plea Agreement).] The court sentenced him to a 72-month term of imprisonment on 5/9/18. [Ex. 3, *U.S. v. Heaphy*, 3:17-CR-00168, Dkt. 34 (Judgment).] He is currently incarcerated at SPC-Lewisburg. [Ex. 4, Knepper Decl., ¶ 3; Ex. 5, Reibsome Decl., ¶ 3.] His current projected release date is 8/18/22. [Ex. 4, ¶ 3; Ex. 5, ¶ 9.]

**B.   Heaphy's FSA Assessment and Activities While Incarcerated.**

1. <u>Heaphy has been assessed to have Anger/Hostility, Recreation/Leisure/ Fitness, Substance Abuse, and Trauma criminogenic needs.</u>

The BOP assessed Heaphy to be a minimum risk of recidivism on 11/18/19. [Ex. 5, ¶ 6; Ex. 5, Attach. C (Inmate History First Step).]  On 5/30/21, he was assessed to have Anger/Hostility, Recreation/Leisure/Fitness, Substance Abuse, and Trauma criminogenic needs.  [Ex. 5, ¶ 6; Ex. 5, Attach. C.] He was previously assessed to have Medical and Finance/Poverty criminogenic needs (on 9/18/20 and 8/3/20, respectively), [Ex. 5, ¶ 6; Ex. 5, Attach. C], and has never been assessed to have Antisocial Peers, Cognitions, Dyslexia, Education, Family/Parenting, Mental Health, or Work criminogenic needs, [Ex. 5, Attach. C.]

2. <u>Heaphy completed two programs to address his FSA needs while incarcerated.</u>

While Heaphy completed several programs while incarcerated, he has completed only two programs that qualify as Evidence-Based Recidivism Reduction (EBRR) programs or Productive Activities (PAs) and correspond to his assessed criminogenic needs: (1) Residential Drug Abuse Treatment Program (RDAP); and (2) Arthritis Foundation Walk.  [Ex. 5, ¶¶ 5-6; *see also* Ex. 5, Attach. A (EBRR Programs and PAs), pp. 2, 4; Ex. 5, Attach. B, (Inmate History); Attach. C.]  He is on the wait list for the Anger Management program.  [Ex. 5, Attach. B, p. 1 (identifying Heaphy as being on the wait list for Anger Management).]

*RDAP* is an EBRR that corresponds to a Substance Abuse criminogenic need, the successful completion of which renders an inmate eligible to receive 500 hours of ETC. [*Id.*, Attach. A, p. 2.] *Arthritis Foundation Walk* is a PA that corresponds to a Recreation/Leisure/Fitness criminogenic need, the successful completion of which renders an inmate eligible to receive six hours of ETC. [*Id.* at p. 4.]

      3. <u>Heaphy has no FSA need for "work," and his work detail is not an EBRRs or PA.</u>

Although he has not been assessed a criminogenic need for "work," [*see* Ex. 5, Attach. C], Heaphy has been assigned a Pipe Fitter work detail since 6/5/20, (*see* Doc. 1-1, p. 6). Pipe Fitter is not an EBRR or PA. [Ex. 5, Attach. A.]

    **C.**    **Heaphy's administrative remedies.**

Heaphy recognizes that he has not exhausted his administrative remedies and admits he submitted only an Inmate Request to Staff (a document which is not part of the Administrative Remedy Program) without pursuing any of the required procedures under the administrative remedy process. [Doc. 1, p. 2; Doc. 1-1, pp. 2-3; Doc. 2, p. 1.]. Indeed, his Administrative Remedy Generalized Retrieval demonstrates Heaphy pursued formal administrative remedies only once. [Ex. 4, Attach. B (Administrative Remedy Generalized Retrieval), p. 2.] That single administrative remedy request was submitted to the Warden on 5/3/21 and sought home confinement pursuant to the CARES Act. [*Id.*]

4

## II. PROCEDURAL HISTORY

Heaphy filed his 28 U.S.C. § 2241 Petition on 6/9/21.  (Doc. 1.)  On 6/24/21, this Court issued an Order directing Respondent to show cause why relief should not be granted.  (Doc. 7.)  Respondent now timely files this Response.

## III. QUESTIONS PRESENTED

    A.    Whether this Court should dismiss the Petition when Heaphy failed to exhaust administrative remedies?

    B.    Whether this Court should deny the Petition as unripe when the BOP is not yet required to calculate the ETCs to which Heaphy may be eligible?

    C.    Whether this Court should deny the Petition when Heaphy is not entitled to 420 days of ETCs or immediate release, even if calculated today?

[***Suggested answers in the affirmative.***]

## IV. ARGUMENT

    **A.    This Court should dismiss Heaphy's Petition because he was required – but failed – to exhaust administrative remedies**.

Federal courts have "consistently applied an exhaustion requirement to claims brought under 28 U.S.C. § 2241." *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000).  They have done so because such a requirement "(1) allow[s] the appropriate agency to develop a factual record and apply its expertise[, which] facilitates judicial review; (2) permit[s] agencies to grant the relief requested[, which] conserves judicial resources; and (3) provid[es] agencies the opportunity to correct their own errors[, which] fosters administrative autonomy." *Moscato v. Fed. Bureau of*

*Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996). A habeas petition must be dismissed when an inmate does not exhaust available administrative remedies.[1] *See Arias v. U.S. Parole Comm'n*, 648 F.2d 196, 199 (3d Cir. 1981).

Heaphy recognizes he filed this habeas petition despite not even attempting to exhaust his administrative remedies. (Doc. 1, p. 2; Doc. 2, p. 1.) The record confirms this. [Ex. 4, Attach. B.] Indeed, as demonstrated by the BOP Administrative Remedy Generalized Retrieval, Heaphy has not filed a single formal administrative remedy request concerning the FSA or the ETCs he believes he is owed, let alone exhausted his administrative remedies through the Central Office. 28 C.F.R. § 542.15.

At best, Heaphy submitted a single "Inmate Request to Staff."[2] (Doc. 1-1, p. 2.) This Request did not assert he was entitled to 420 days of ETC as he alleges now; to the contrary, he only requested Case Manager Rich to "provide proof of

---

[1] The BOP has established an administrative remedy procedure through which an inmate may submit complaints relating to any aspect of his confinement. Inmates must first present their complaints to staff in an attempt to informally resolve the matter. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate may then present the issue to the warden within 20 calendar days of the events giving rise to the complaint. *Id.* § 542.14. If an inmate is dissatisfied with the warden's response, he may then appeal to the BOP Regional Director within 20 calendar days. *Id.* § 542.15(a). If the Regional Director's response is unsatisfactory, the inmate may then appeal to the BOP Central Office within 30 calendar days. *Id.* No administrative remedy appeal is considered to have been fully exhausted until it is pursued through all levels, including through the Central Office.

[2] An "Inmate Request to Staff" is not a request under the Administrative Remedy Program. Federal regulations require an inmate to complete an "informal resolution" (commonly known as a BP-8) before submitting a formal Administrative Remedy Request (form BP-9) to the Warden. *See* 28 C.F.R. 542.13-542.14.

calculation and application of his FSA credits," and referenced another inmate who had received ETCs.[3] (Doc. 1-1, p. 2.) In response, CM Rich identified that, pursuant to the FSA, ETCs will be calculated for all inmates no later than 1/15/22, and that ETCs for which Heaphy is eligible will be determined and applied when applicable. (*Id.*) Rather than pursuing this issue through the Administrative Remedy Program by submitting an Informal Resolution Attempt (BP-8), followed by an Administrative Remedy Request to the Warden, 28 C.F.R. § 542.13-542.14, or the two levels of administrative appeals to the Regional and Central Offices (to the extent necessary), as he was required to do, 28 C.F.R. § 542.15, Heaphy bypassed administrative remedies altogether and brought his claim directly to federal court as a habeas petition. (Docs. 1-3.) His Petition must therefore be dismissed. *See Kurti v. White*, 2020 WL 2063871, *3 (M.D. Pa. Apr. 29, 2020) (dismissing habeas petition requesting release under the FSA when the petitioner "ha[d] clearly failed to exhaust administrative remedies with respect to the time credit he requests in the … petition"); *Rehfuss*, 2021 WL 2660869 at *3 (same); *Rominger v. Spaulding*, 2021 WL 2894760, *2-3 (M.D. Pa. July 9, 2021) (same).

Heaphy's request that this Court waive the exhaustion requirement is meritless. Even if Heaphy believed CM Rich's response rendered his

---

[3] This inmate also filed a habeas petition. *Rehfuss v. Spaulding*, 2021 WL 2660869, *3 (M.D. Pa. June 29, 2021) (Kane, J.) Notably, this Court denied habeas relief to that petitioner.

administrative remedies futile, (Doc. 1-1 at p. 3), it is well established that "[e]xhaustion of administrative remedies are not rendered futile simply because a prisoner anticipates he will be unsuccessful," *Malvestuto v. Martinez*, 2009 WL 2876883, *3 (M.D. Pa. Sept. 1, 2009); *Rehfuss*, 2021 WL 2660869 at *3; *Rominger*, 2021 WL 2894760 at *3. Indeed, the multi-tiered administrative remedy process expressly contemplates an inmate who is unsuccessful at one level may be successful at the next. But due to Heaphy's decision to bypass the formal administrative remedy process altogether, the BOP has not been given an opportunity to apply its expertise or address his claim that he is entitled to release under the FSA based on the programs he has completed. *See Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

This case in particular demonstrates the value of agency expertise to issues under the FSA and undermines Heaphy's claim that this case "hinges on statutory construction," (Doc. 1, ¶ 13.) As demonstrated below, Respondent has not taken the position that Heaphy cannot receive ETCs, just that his ETCs have not yet been fully calculated pursuant to the FSA's clear phase-in provisions due to the remoteness of his release date. [*See infra* Part.IV.B.] And whether Heaphy may ultimately be entitled to ETCs (or habeas relief) involves his eligibility for, participation in, and applicability of various programs under the FSA, including the number of hours awarded for the EBRRs or PAs Heaphy completed, which are

disputed. [*See infra* Part.IV.C.] These are issues unrelated to statutory interpretation, and render *Goodman v. Ortiz*, 2020 WL 5015613 (D.N.J. Aug. 15, 2020), inapposite.[4] *See Bradley v. Spaulding*, 2021 WL 1964598, *2 (M.D. Pa. May 17, 2021) (distinguishing *Goodman* when the parties disputed the ETCs to which the petitioner claimed entitlement); *Rehfuss*, 2021 WL 2660869 at *3 (same); *Rominger*, 2021 WL 2894760 at *3 (same); *Ware v. Quay,* 1:21-cv-646, 2021 WL 2550253, *2 (M.D. Pa. June 22, 2021) (same); *see also Cohen v. Carvajal*, 2021 WL 1549917 (S.D.N.Y Apr. 20, 2021) ("[The parties] disagree about [the petitioner's] eligibility for, participation in, and applicability of the various programs he claims to have completed to any potential [ETCs] under the FSA. These are issues unrelated to statutory interpretation and would benefit from further development of the record in administrative process.").

Because Heaphy admittedly did not exhaust his administrative remedies and has not established a basis to excuse exhaustion, this Court should dismiss the Petition.

---

[4] In *Goodman*, the parties did not dispute that the petitioner had successfully participated in several PAs that met the requirements of the FSA or had earned a specific number of credits. 2020 WL 5015613 at *2. Rather, the dispute concerned the respondent's bright-line position that ***no inmate*** could ***earn*** ETCs for programs completed pursuant to the FSA until 1/15/22. *Id.* at *6.

> **B.    Alternatively, this Court should deny Heaphy's Petition as premature because the BOP has not yet calculated the ETCs to which Heaphy is eligible.**

The FSA charged the Attorney General with developing the Risk and Needs Assessment System (the "System").[5] The System is designed to assess and redress an inmate's risk of recidivism through appropriate EBRRs[6] and PAs[7], *see* 18 U.S.C. § 3632(a), and provides guidance on the nature of EBRRs and PAs to be assigned to each inmate based on his specific criminogenic needs, *see* 18 U.S.C. § 3632(b).  As an incentive, the statute permits an eligible inmate who successfully completes EBRRs or PAs to ETCs that can be applied toward time in prerelease custody or supervised release.  *See* 18 U.S.C. § 3632(d)(4)(A).

The Attorney General was allowed 210 days after the FSA was enacted to develop and publish the System for the BOP to use as a guide to implement the programs.  18 U.S.C. § 3632(a).  The Attorney General published the System on

---

[5] The Risk and Needs Assessment Tool is "an objective and statistically validated method through which information is collected and evaluated to determine (A) as part of the intake process, the risk that a prisoner will recidivate upon release from prison; (B) the recidivism reduction programs that will best minimize the risk that the prisoner will recidivate upon release from prison; and (C) the periodic reassessment of risk that a prisoner will recidivate upon release from prison, based on factors including indicators of progress and regression, that are dynamic and that can reasonably be expected to change while in prison." 18 U.S.C. § 3635(6).

[6] An EBRR program is an activity that has been shown by empirical evidence to reduce recidivism, designed to help prisoners succeed in their communities upon release, and may include a variety of life skills.  *See* 18 U.S.C. § 3635(3).

[7] A PA is an activity designed to allow minimum or low risk prisoners to remain productive and thereby maintain a minimum or low risk of recidivating, and commonly involves delivering EBRRs to other prisoners.  *See* 18 U.S.C. § 3635(5).

7/19/19. *Kurti*, 2020 WL 2063871 at *4, n.2 (citing <u>The First Step Act of 2018: Risk and Needs Assessment System</u>, *accessible online at* <u>https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf</u>). The BOP then had 180 days, *i.e.*, to 1/15/20, to implement the System, complete inmate assessments, and then begin to assign prisoners to appropriate EBRRs and PAs that can qualify for ETCs. 18 U.S.C. § 3621(h)(1). The BOP must "phase-in" the System to all prisoners within two years from publication, *i.e.*, by 1/15/22. 18 U.S.C. § 3621(h)(2). And, until the end of the phase-in period, the BOP may – but is not required to – begin offering incentives, such as calculating applying ETCs, to inmates who successfully complete EBRRs or PAs. 18 U.S.C. § 3621(h)(4) ("Beginning on the date of enactment of this subsection, the [BOP] *may* begin to expand any [EBRR] programs and [PAs] that exist at a prison as of such date, and *may* offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in [18 U.S.C. §§ 3631-3635]." (emphasis supplied)). During that two-year phase-in period, the FSA instructs the BOP to consider a "prisoner's proximity to release date" when prioritizing inmates to benefit from programming. 18 U.S.C. § 3621(h)(3). As a result, and as this Court has recognized, the BOP need not, and may not be able to, apply ETCs to all prisoners during the phase-in period. *See, e.g.*, *Rominger*, 2021 WL 2894760 (recognizing that the petitioner could not earn

11

ETCs for his EBRR participation during the phase-in period because the BOP "is still formulating guidance for the calculation and application of credits").

Accordingly, habeas claims are unripe when a petitioner seeks application of ETCs that have not yet been calculated by the BOP. *See, e.g.*, *Llewlyn v. Johns*, 2021 WL 535863, *2 (S.D. Ga. Jan. 5, 2021) ("Because the First Step Act does not require actual implementation for each inmate until January 2022, [the petitioner] is not entitled to an order from this [c]ourt compelling the BOP to recalculate his time credits. His petition is premature, and his claim is not yet ripe."), *rep. adopted,* 2021 WL 307289 (S.D. Ga. Jan. 29, 2021); *Herring v. Joseph*, 2020 WL 3642706, *1 (N.D. Fla. July 6, 2020) ("Petitioner has no current right to the relief requested in the petition since the [BOP] has until January 2022 to implement the provisions of the First Step Act on which the petition is based."); *Cohen*, 2021 WL 1549917 at *2 (concluding petition was premature after finding "the BOP is not required to [begin] providing credits and, until the phase-in period is completed."); *Kennedy-Robey v. FCI Pekin*, 2021 WL 797516, *4 (C.D. Ill. March 2, 2021) ("The use of the word 'may' indicates that, while it is permissible for the BOP to award time credits under the statute at any time after the date of enactment, the BOP is not *required* to do so."); *Hand v. Barr*, 2021 WL 392445, *5 (E.D. Cal. Feb. 4, 2021) ("[B]ecause the [FSA] does not require BOP to provide [EBRR] programs and [PAs] for all prisoners until January 2022, the Court finds that Petitioner's claims regarding [ETCs] and

12

[EBRR] programs are not ripe."), *rep. adopted,* 2021 WL 1853295 (E.D. Cal. May 10, 2021).[8]

Consistent with the FSA's phase-in and priority provisions, the BOP has calculated and applied ETCs for at least some inmates who completed EBRR programs and PAs and have release dates before 1/15/22. *See, e.g.*, *Rehfuss*, 2021 WL 2660869 at *4. Heaphy, however, is not one of those priority inmates, as his release date is 8/18/22; more than seven months after the BOP must fully implement the System. [Ex. 5, ¶ 9.] Accordingly, and as reflected in CM Rich's response, the BOP will calculate and apply any ETCs for which Heaphy is eligible (including those for qualifying EBRR programs or PAs already completed) with the benefit of forthcoming policy that will be implemented pursuant to the FSA no later than 1/15/22. [*Id.*] At this time, however, Heaphy's Petition is premature and should be dismissed.

---

8 *Goodman* implicitly recognized that the FSA's gradual phase-in may not extend to every inmate. 2021 WL 5015613 at *5 (recognizing the FSA anticipates some [(but not all)] prisoners will complete the programs within the 2-year phase-in period"). And, in any event, several courts have rejected *Goodman* to the extent it can be interpreted to require the BOP to award ETCs to all eligible prisoners during the phase-in period. *See, e.g.*, *Cohen*, 2021 WL 1549917 at *3 ("While it is true that the statute requires a phase-in, this misses the point that the statute requires various activities during the phase-in period, but pointedly does not require the BOP to [begin] to assign ETCs during the phase-in period. The statute contemplates a two-year period for the development of programs and the validation of risk assessment tools, but does not require the BOP to truncate that process and begin to award ETCs during that period."); *Kennedy-Robey*, 2021 WL 797516 at *4 ("While the 'phase-in' period may imply a 'phase-in' of the incentives, this Court is not in the position of determining on which date these incentives must be 'phased-in.'").

C. **Even if the BOP was required to calculate and apply ETCs for Heaphy during the phase-in period, he is not entitled to the 420 days of ETCs for which he claims eligibility.**

But even if the BOP was required to now calculate and apply ETCs to which Heaphy may be eligible, Heaphy's claim for habeas relief still fails. Contrary to Heaphy's argument, no calculation permitted by the FSA could result in his entitlement to 420 days of ETCs; he is eligible for, at most, 30 days of ETC.

Heaphy's claim is based on his belief that he is entitled to ETCs for his working as a Pipe Fitter and completing RDAP, Parenting, Resume Writing, Spanish, Goal Setting, Drug Education Class, Non-Residential Drug Abuse Program, and Narcotics Anonymous. (Doc. 3, ¶ 2.) He is wrong because ETCs "are earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate." *Hare v. Ortiz*, 2021 WL 391280 at *9 (D.N.J. Feb. 4, 2021). Thus, Heaphy may not receive ETCs for: programming completed before 1/15/20 (the System implementation); programming that does not qualify as an EBRR or PA; or programming that does not correspond to a criminogenic need.

    1. *Heaphy is not eligible for ETCs related to programming completed before 1/15/20.*

The errors in Heaphy's argument are apparent from his basing his calculations on activities completed before 1/15/20. (*See* Doc. 1, 10 (calculating he is owed ETCs from the FSA's 12/21/18 date of enactment). But it is settled that inmates

14

cannot earn time credits for education and programming prior to 1/15/20.  *See, e.g.*, *Kurti*, 2020 WL 2063871 at *5; *Rehfuss*, 2021 WL 2660869 at *5 n.4.  His calculation method is fundamentally flawed.

Reviewing the Program Review Heaphy provided leads to the same result.[9]  Heaphy seeks ETCs for completing Beginning Spanish and Drug Education.  (Doc. 1-1, p. 6; Doc. 3, ¶ 2.)  But these programs were completed in 2019 and 2018, respectively.  Accordingly, Heaphy is not eligible for ETCs related to his completing courses that predate 1/15/20.

> 2. *Resume Writing, Spanish, and Goal Setting are not EBRR programs or PAs and, therefore, do not entitle Heaphy to ETCs.*

Heaphy's belief that he is entitled to 420 days of ETCs is based, in part, on his completing Resume Writing, Spanish, and Goal Setting.  (Doc. 1-1, p. 6; Doc. 3, ¶ 2.)  But these courses are not approved EBRR programs or PAs.  [Ex. 5, Attach. A.]  Heaphy cannot receive ETCs for completing these programs because "only those EBRRs and PAs described in the First Step Act Approved Programs Guide qualify for Time credits under the FSA."  *Hare*, 2021 WL 1346253 at *1.  Accordingly, Heaphy is not eligible for ETCs related to his completing programs that do not qualify as EBRRs or PAs.

---

[9] Heaphy' alleges he completed Narcotics Anonymous, but that is unsupported in either his exhibits, (Doc. 1-1, p. 6.), or the BOP's Inmate Histories, [Ex. 5, Attach. B].

15

> 3. *Parenting does not correspond to an assessed criminogenic need and, therefore, does not entitle Heaphy to ETCs.*

Heaphy's belief that he is entitled to 420 days of ETCs is also based, in part, on his completing Parenting Level I. (Doc. 1-1, p. 6.) While "National Parenting from Prison" is identified as an EBRR, it only corresponds to a Family/Parenting criminogenic need. [Ex. 5, Attach. A, p. 2.] Heaphy has never been assessed to have a "Family/Parenting" criminogenic need. [Ex. 5, ¶ 6; Ex. 5, Attach. C.] "[O]nly 'a prisoner who successfully completes the EBRR programs and PAs ***to which he or she has been assigned*** earns Time Credits as set forth in § 3632(d)(4)(A).'" *Butler v. Bradley*, 2021 WL 945252 at *4 (C.D. Cal. Feb. 22, 2021) (quoting *Hare*, 2021 WL 391280 at *3)). Accordingly, Heaphy is not eligible for ETCs for completing a program that does not correspond to his assessed criminogenic needs.

> 4. *A Pipe Fitter work detail is not an EBRR or PA and does not correspond to an assessed criminogenic need and, therefore, do not entitle Heaphy to ETCs.*

Similarly, Heaphy has never been assessed to have a "work" criminogenic need. [Ex. 5, Attach. C.] Accordingly, he cannot earn ETCs for his work detail. *Butler*, 2021 WL 945252 at *4; *Hare*, 2021 WL 391280 at *9. But even if he had such a criminogenic need, his work detail as a Pipe Fitter is not and has never qualified as an EBRR or PA. [Ex. 5, Attach. A.] *See Butler*, 2021 WL 945252 at *4 ("If an inmate could accrue FSA credits by participating in any type of

16

recidivism-reduction program or activity, the statutory language instructing the BOP to establish and implement an individualized risk and needs assessment system, 18 U.S.C. § 3632(a), (b), would be superfluous."). Accordingly, Heaphy is not eligible for ETCs related to his work detail.

> 5. *Based on his completion of qualified EBRRs and PAs after 1/15/20, Heaphy would be eligible for 30 days of ETCs if calculated today.*

Heaphy has completed only two EBRR programs or PAs that address his criminogenic needs (RDAP (500 hours) and Arthritis Walk (6 hours)).[10] [Ex. 5, ¶¶ 5-6; Ex. 5, Attach. A, pp. 2, 4; Ex. 5, Attach. B.] Thus, if his ETCs were calculated today, he would be eligible for ETCs based on 506 hours of qualifying programming.

The FSA, however, permits the BOP to apply ETCs only in terms of days. *See* 18 U.S.C. § 3632(d)(4)(A)(i), (ii). Therefore, when the BOP calculates and applies Heaphy's ETCs, it will convert the 506 hours into days. [*See* Ex. 5, ¶ 8.] Because the FSA does not define the term "day," and despite the ordinary meaning of a "day" as 24-hours, the BOP reasonably considers a day to be 8 hours, *i.e.*, an average workday.[11] [*Id.*] Therefore, the 30-day period of EBRR or PA successful

---

[10] While Heaphy alleges he completed the Non-Residential Drug Abuse Program, his exhibits, (Doc. 1-1, p. 6), and Inmate History, [Ex. 5, Attach. B], only demonstrate he had commenced, but not yet completed, that program before filing his Petition.

[11] To the extent advanced, any challenge to the BOP's interpreting 1 day to mean 8 hours fails. The word "day" in the FSA is undefined, and Black's Law Dictionary defines the term with various alternative meanings. DAY, Black's Law Dictionary (11th ed. 2019). Given that there are conflicting ordinary meanings of the word "day," such as 24 hours or any specified time period,

completion for which ETCs are awarded under the FSA equates to 240 hours. [*Id*.] *See also Rehfuss*, 2021 WL 2660869 * at 5; *Rominger*, 2021 WL 2894760, *4.

The 506 hours to which Heaphy is eligible constitutes two 240-hour periods.[12] Assuming Heaphy remains a minimum recidivism risk, two 240-hour periods will equate to 30 days of ETCs. Thus, Heaphy's claim that he is entitled to 420 days of ETCs is without merit, even if it was ripe.

## V. CONCLUSION

Heaphy admittedly filed his Petition without first exhausting his administrative remedies. The Court should therefore dismiss his Petition. But even if it considered the Petition on the merits, Heaphy's claim is not ripe because the BOP is not yet required to calculate and apply ETCs to all prisoners, especially

---

this provision of the statute is ambiguous. "[I]f the statute is silent or ambiguous with respect to a specific issue, the question for the court is whether the agent's answer is based on a permissible construction of the statute.'" *Egan v. Del. River Port Auth.*, 851 F.3d 263, 269 (3d Cir. 2017) (quoting *Chevron v. Natural Resources Def. Council*, 467 U.S. 837, 842-43 (1984)). An agency's interpretation is reasonable and permissible when it is consistent with the purposes of the statute. *Id.*

The express purpose of awarding ETCs under the FSA is to "provide incentives and rewards for prisoners to participate in and complete [EBRRs]." 18 U.S.C. § 3632(d). The BOP's interpretation of a "day" as an 8-hour workday is consistent with the statutory delegation of the power to "determine when to provide incentives and rewards," 18 U.S.C. § 3632(a)(6), and "reasonable because it incentivizes approved EBRR programs and PAs equally, dependent on the total number of hours of participation," *Hare*, 2021 U.S. 1346253 at *1 ("The Court found the BOP's interpretation of 18 U.S.C. § 3632(d)(4)(A)(i) reasonable. Thus, '30 days of successful participation in evidence-based recidivism reduction programming or productive activities' means completion of 240 hours of EBRR or PAs." (internal citations omitted) (citing *Hare*, 2021 WL 391280 at *12)). *See also* 85 Fed. Reg. at 75272 (proposed regulation 28 C.F.R. § 523.42(d)(1)).

12 The FSA awards ETCs for 30-day periods of successful EBRR/PA programing completed. *See* 18 U.S.C. § 3632(d)(4)(A). The FSA does not provide for partial ETC awards

18

considering Heaphy's release date is more than a year away. And even if the BOP today calculated the ETCs for the EBRRs and PAs Heaphy completed, Heaphy would be eligible to no more than 30 days of ETCs, far short of the 420 days of ETCs to which he claims and insufficient to warrant his immediate release. For all – or any – of these reasons, this Court should deny Heaphy's Petition for habeas relief.

Respectfully submitted,

**BRUCE D. BRANDLER**
Acting United States Attorney

*/s/ Harlan W. Glasser*
Harlan W. Glasser, AUSA (PA 312148)
Cynthia E. Roman, Paralegal Specialist
228 Walnut Street
Harrisburg, PA 17101
Tel:        (717) 221-4482
Fax:       (717) 221-4493
Email:    Harlan.Glasser@usdoj.gov

Date:   July 15, 2021

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THOMAS HEAPHY, JR.,** | : | Civil No. 1:21-CV-1019 |
| Petitioner | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | |
| **STEPHEN SPAULDING,** | : | Filed Electronically |
| Respondent | : | |

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.   That on July 16, 2021,[13] she served a copy of the attached

### RESPONSE TO THE
### PETITION FOR WRIT OF HABEAS CORPUS

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Scranton, Pennsylvania.

Addressee:
Thomas Heaphy, Jr.
Reg. No. 25466-014
P.O. Box 2000
Lewisburg, PA 17837

       s/ Patricia J. Mellody
       Patricia J. Mellody
       Administrative Assistant

---

[13] Due to limited staff availability caused by COVID-19 staffing restrictions in federal buildings, the United States Attorney's Office did not have a staff member available to serve a copy of the instant Response until July 16, 2021.